**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

UNITED STATES OF AMERICA,

v.

STEPHEN LAMAR SPENCER,

    Defendant.

CASE NO.: 4:19-cr-86

## O R D E R

The United States of America charges Defendant Stephen Lamar Spencer with one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). (Doc. 1.) The Court set this case for a jury trial commencing on February 11, 2019, and the United States filed two Motions in Limine. (Docs. 57, 58.) In its first Motion in Limine, the United States asks the Court to find that the admission at trial of statements made during the 911 call that precipitated Defendant's arrest ("the 911 call") would not violate the evidentiary prohibition against hearsay or the Confrontation Clause of the Sixth Amendment to the United States Constitution. (Doc. 57.) In its Second Motion in Limine, the United States asks the Court to take judicial notice that cocaine hydrochloride and cocaine base are Schedule II Controlled Substances. (Doc. 58.) Defendant has not filed a written response to either of these Motions. The Court held a pretrial conference in this case on January 30, 2019. At that hearing, Defendant contested the United States' Motion in Limine regarding the admissibility of the 911 call, (doc. 57), but did not oppose the United States' Motion in Limine regarding judicial notice, (doc. 58). For the reasons set forth below, the Court **GRANTS** the United States' Motions.[1]

---

[1] As noted below, while the Court grants the United States' Motion regarding the 911 call, that Motion

## BACKGROUND

The United States contends that Defendant Spencer possessed cocaine and crack cocaine on September 22, 2017 in Liberty County, Georgia. (See Doc. 1.) The investigation underlying this charge began when an anonymous female telephoned a 911 emergency dispatcher[2] to report that an individual was selling drugs on a street corner near her home. The following is the entirety of the conversation between the dispatcher ("D") and the anonymous female ("AF"):

D: 911, where is your emergency?

AF: Ok, um, it's not really an emergency, emergency, but there's a guy sellin' drugs at the end of Lewis Frasier Road and Slade Road. He's sittin' in a car (dog barks in background).

D: Lewis Frasier Road—

AF: Yeah—

D: Okay—

AF: Lewis Fraiser and Slade Road right when you turn in, he's sittin' there selling drugs.

D: Okay, hold on let me see if I can (muffled background noise) Slade road. And what is—is he in a vehicle?

AF: Yes.

D: What kind?

---

only addressed the prohibition against hearsay and the Confrontation Clause. These are only two of the hurdles that the United States must overcome to introduce the audio recording and transcript of the 911 call. Thus, as described below, counsel should be prepared to discuss any other evidentiary prerequisites at trial and must take precautionary measures as to the substance of the call until the Court rules on the ultimate admissibility of this evidence.

[2] Some courts refer to the person answering a 911 call as an "operator." Here, the Government uses the term "dispatcher." The Court sees no difference in these terms and uses them interchangeably.

| | | |
|---|---|---|
| AF: | Um, it's a small light-colored car, I'm not quite sure. Cause I—when I come home he's sittin' there and people be comin' in and out and I know that's what he's doing. | |
| D: | Light colored as in like (pause) beige or something or…? | |
| AF: | Yeah like a beige-y type car. | |
| D: | Ok. Well, do you know what he was wearing? | |
| AF: | Um, no. All I know is he's a dark skinned, heavy set guy. | |
| | (pause for typing) | |
| D: | Okay and, um, what is your name? | |
| AF: | Do I have to give my name? | |
| D: | No, you don't, you don't. | |
| AF: | Ok. | |
| D: | Um, uh a-and you know he's selling drugs- | |
| AF: | Oh yeah. | |
| D: | because you've seen it before or you just know? | |
| AF: | yeah I know cause he's been doing it. | |
| D: | Okay, okay, alright. I'm going to get somebody headed to check, okay? | |
| AF: | Okay, thank you | |
| D: | Okay, uh huh, bye-bye. | |

(Doc. 57-1, pp. 2–3.) [3]

---

[3] The transcript of the 911 call is attached to the Government's Motion in Limine. (Doc. 57-1.) Pursuant to the Court's Criminal Trial Management Order, the Government provided the Court an audio recording of the entire call as well as a redacted version of the recording that it proposes to offer as a trial exhibit. The Court has listened to those recordings and confirmed that the transcript accurately reflects the audio recordings and redactions. The audio recording of the entire call shall be maintained by the Clerk of Court as Attachment 1 to this Order.

The Government contends that approximately two to three minutes after the call, two officers with the Liberty County Sheriff's Office responded to the call and arrived at the location identified by the caller (the corner of Lewis Fraiser Road and Slade Road). (Doc. 57, p. 2.) The officers allegedly found the scene just as the caller described—with a heavy-set man sitting inside a beige Nissan Altima in an abandoned lot. (Id.) Upon the officers' arrival, two individuals who had been standing outside the beige vehicle quickly walked away from it, and Defendant, the sole occupant of the vehicle, allegedly rushed out of the car towards one of the officers. (Id.) After Defendant complied with the officer's instructions to return to the vehicle, the officers allegedly observed crack cocaine within the vehicle and, therefore, placed Defendant under arrest. (Id.) Subsequent searches of the vehicle uncovered crack cocaine, powder cocaine, United States currency, and tools of the drug trade. (Id.)

## DISCUSSION[4]

In its written and oral argument supporting its Motion in Limine regarding the 911 call, the Government clarified that it would redact and not seek admission of the following portion of the call: "D: because you've seen it before or you just know? AF: yeah I know cause he's been doing it." (Id. at p. 4 n.1.) As to the remainder of the call, the United States makes two separate but related arguments regarding its admissibility: (1) the statements made by the anonymous caller during the call are not inadmissible hearsay because they describe the caller's present sense impressions; and (2) the caller's statements are nontestimonial and, thus, not barred by the

---

[4] As Defendant did not oppose the United States second Motion in Limine (regarding judicial notice), (doc. 58), the below discussion solely pertains to the United States' first Motion in Limine (regarding the 911 call), (doc. 57). Because Defendant does not contest the second Motion in Limine, (doc. 58), it is granted as unopposed. Additionally, the Court has reviewed that Motion and finds that it is well supported. Accordingly, the Court **GRANTS** the Unites States' Motion in Limine regarding judicial notice, (doc. 58), and takes judicial notice that cocaine hydrochloride and cocaine base are Schedule II Controlled Substances within the meaning of the Controlled Substances Act including 21 U.S.C. §841. The Court will so instruct the jury.

Confrontation Clause of the Sixth Amendment to the United States Constitution. (Id. at pp. 3–6.) The Court agrees with the Government on each of these points and finds that the call clears each of these hurdles of admissibility.

As to the first hurdle, "'[h]earsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is not admissible during a trial unless specifically excepted by statute or rule. Fed. R. Evid. 802. Pertinently, Federal Rule of Evidence 803(1) provides that statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it," also known as "present sense impressions," are excepted from the rule against hearsay and are not excluded, regardless of the declarant's availability as a witness. "'The underlying theory of this exception is that the substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation.'" United States v. Holmes, 498 F. App'x 923, 924 (11th Cir. 2012) (quoting United States v. Scrima, 819 F.2d 996, 1000 (11th Cir. 1987)).

The statements the anonymous female made during the 911 call fall squarely within Rule 803(1)'s present sense exception. The caller described an event and surrounding conditions: an individual selling drugs at a specified location within a vehicle; people coming and going from the vehicle; the individual's appearance; and the color of the car the individual was sitting in. (Doc. 57-1, pp. 2–3.) Further, the caller saw the event and surrounding conditions and relayed her own perceptions, not what someone else told her. (Id. ("'Cause I—When I come home he's sittin' there and people be comin' in and out and I know that's what he's doing;'. . . 'All I know is he's a dark skinned, heavy set guy;' . . . D: 'Um, uh a-and you know he's selling drugs—' AF: 'Oh yeah.'").) Additionally, throughout the call, except during the redacted portion, the caller spoke in the present

5

tense. (Id. ("'there's a guy sellin' drugs at the end of Lewis Frasier Road and Slade Road. He's sittin' in a car;' . . . 'right when you turn in, he's sittin' there selling drugs' . . . 'he's sittin' there and people be comin' in and out'").) Thus, the caller described the event and conditions while or immediately after she perceived them. For all these reasons, the content of the 911 call itself establishes that the caller's statements fall within Rule 803(1)'s present sense impression exception. See United States v. Daniels, 554 F. App'x 885, 887 (11th Cir. 2014) (district court did not abuse discretion in admitting statements made by anonymous caller to 911 dispatcher because statements were present sense impressions of caller).

The circumstances surrounding the 911 call further indicate that the statements qualify as present sense impressions. Though the caller described the situation as "not really an emergency, emergency," (doc. 57-1, p. 2), her call to 911 inherently indicates that she wanted a law enforcement officer or other emergency responder to address a current situation. Indeed, when the dispatcher stated that she would send someone to the scene, the caller thanked her. (Id. at p. 3.) Further, the Government has proffered that when officers arrived at the intersection of Lewis Fraiser Road and Slade Road a mere two minutes after the phone call, they discovered the scene to be just as the caller described it. Thus, Defendant was not describing events and conditions that preceded her call, but instead those that were presently occurring as she spoke to the 911 dispatcher.

As for the second hurdle addressed by the United States' Motion, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. Amend. VI. The Confrontation Clause bars the admission of any out of court statement that is "testimonial," unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S.

36, 68 (2004). "'Testimonial' statements are typically 'solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact,' and may include 'material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.'" United States v. Cray, 450 F. App'x 923, 933 (11th Cir. 2012) (quoting Crawford, 541 U.S. at 51).

In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court addressed the implications of the Confrontation Clause and specifically evaluated whether the statements made by a victim during a 911 call constituted "custodial statements." The Court held,

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822. The Supreme Court concluded that the 911 caller's statements to a 911 operator were nontestimonial and, thus, properly admitted. To support this decision, the Court noted a number of characteristics of the 911 call that distinguished it from the custodial statement involved in Crawford: (1) "the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance;" (2) the caller was "speaking about events *as they were actually happening*, rather than describing past events;" (3) the caller was facing an "ongoing emergency;" (4) "the nature of what was asked and answered . . . again, viewed objectively, was such that the elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past;" and (5) the 911 call had a lower "level of formality" and the caller provided answers "in an environment that was not tranquil." Id. at 827 (emphases in the original, citations and quotations omitted). The Court concluded that these circumstances

7

objectively indicated that the purpose of the interrogation during the 911 call "was to enable police assistance to meet an ongoing emergency" and that the caller "simply was not acting as a *witness*; she was not *testifying*." Id. at 828 (emphases in original). Following Davis and other Confrontation Clause precedent, the Eleventh Circuit Court of Appeals has emphasized that the court's focus must be on the purpose of the questioning that produced the statements at issue. See United States v. Santos, 947 F.3d 711, 728 (11th Cir. 2020) ("Since Crawford, the Supreme Court has distinguished between nontestimonial and testimonial statements by focusing on 'the primary purpose' of the questioning that elicited the out-of-court statement.") (quoting Davis, 547 U.S. at 822).

Applying this precedent to circumstances similar to those presented by the 911 call in this case, courts have held that the caller's statements are nontestimonial and thus, not barred by the Confrontation Clause. For example, in United States v. Polidore, 690 F.3d 705, 710–719 (5th Cir. 2012), the United States Court of Appeals for the Fifth Circuit upheld the trial court's admission of statements made by an anonymous caller regarding drug trafficking activity during two 911 calls. Like the caller in this case, the caller in Polidore told the operators that the defendant was currently selling drugs and described the defendant's location, physical characteristics, and the vehicle from which he was selling drugs. Id. at 708–09. The Fifth Circuit determined that "an objective examination of the 911 caller's 'statements and actions' does not indicate that 'the primary purpose of the interrogation' was to 'enable police assistance to meet an ongoing emergency.'" Id. at 715 (quoting Michigan v. Bryant, 562 U.S. 344, 359 (2011)). Nonetheless, the court held that the statements were nontestimonial because "given the nature of the ongoing criminal activity and the caller's request for assistance from the police, a reasonable person in the caller's position would not have thought that his statements were creating an out-of-court substitute

for trial testimony." Id. at 717.

In the case at hand, it is even clearer that the questions and answers during the 911 call were not aimed at the creation of testimony. As an initial matter, given the inherent danger presented by drug trafficking activities, the anonymous caller arguably dialed 911 to seek assistance with an ongoing emergency. Regardless, the anonymous caller certainly called to "describe current circumstances requiring police assistance" and not "to establish or prove some past fact." Davis, 547 U.S. at 827. Further, the caller spoke "about events *as they were actually happening*." Id. (emphasis in original). Indeed, except for the singular statement that the Government has agreed to redact, the caller did not describe any past events. (See Doc. 57-1.) Moreover, "the nature of what was asked and answered," when viewed objectively, demonstrates that the interrogation was necessary to assist the police in responding to and resolving the ongoing activity reported by the caller "rather than simply to learn . . . what had happened in the past." Davis, 547 U.S. at 827. The dispatcher only asked questions such as the location of the activity, what the individual selling drugs was wearing, whether he was in a vehicle, and what the vehicle looked like. (See Doc. 57-1.) The primary purpose of these questions was to help the police officers know where to go as well as what and whom to look for when they arrived. From these questions, an objective caller would understand that the brief interrogation was designed to assist the police in responding to the current situation and not to help them prove their case in court. Indeed, the dispatcher did not even ask if the caller knew the name of the individual selling drugs. (Id.) Further, when the caller stated that the individual had been selling drugs in the past, the dispatcher did not ask any questions about those past events. (Id.) Tellingly, once the dispatcher stated that she would send someone to the scene, the caller thanked the dispatcher, and the call ended. (Id. at p. 3.) Given all these facts, an objective person in the caller's position would not

9

think that she was being asked to create an out of court statement to be used at trial.  Put simply, "she was not acting as a *witness*; she was not *testifying*."  Davis, 547 U.S. at 828.

## CONCLUSION

For the reasons and in the manner set forth above, the Court **GRANTS** the United States' Motions in Limine.  The Court agrees with the Government that the 911 call does not constitute inadmissible hearsay and that introduction of the call would not violate the Defendant's Sixth Amendment rights guaranteed in the Confrontation Clause.  Of course, these are only two of the hurdles to admissibility that the Government must overcome.  At the pretrial conference, Defendant's counsel raised arguments that appear to question whether any probative value of the call (or at least a portion thereof) is outweighed by unfair prejudice.  The Court need not address those arguments here because they are not responsive to the Government's Motion.  Further, Defendant has not filed a motion in limine and has not yet lodged a formal objection.  It is not clear from counsel's oral argument if he contests any prerequisites to admissibility other than those raised by the Government's Motion.  Thus, counsel for the United States and the Defendant should be prepared to address any other prerequisites for admissibility during the trial of the case. Given the preliminary (albeit vague) arguments that Defendant's counsel raised at the pretrial conference, the Government and its witnesses shall not discuss the contents of the call (including during opening statement) until the Court rules on its ultimate admissibility.

**SO ORDERED**, this 10th day of February, 2020.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA